The opinion of the court was delivered by
Fenner, J.
The State, through her tax collector, claims a license *562 from defendants for conducting the business of “editing, printing, publishing and sending a newspaper called the Daily States.”
This business, though from its nature the most public and universally known of all, is not included in the enumeration of businesses taxed contained in the State license law. The tax collector predicates his claim exclusively upon the concluding phrase of the act, which levies a license on “ all other business not herein provided for.” The omission is certainly significant, as indicating either that the Legislature did not consider this business as taxable, or that it did not intend to tax it. ,
We have held that the legislative power to levy license taxes under Art. 206 of the Constitution, is discretionary and not mandatory, and that the State may abstain from taxing any occupation or calling, if it so desire. City vs. Mulé, 38 An. 826.
The inference that, if the Legislature had intended to tax this particular calling, it would have named it, particularly as it did specifically name the business of “editor,” is very strong; but as defendants have pleaded exemption under Art. 206 of the Constitution, which exempts from license taxation, “manufacturers other than those of distilled liquors, tobacco and cigars and cotton seed oil,” we prefer to rest our decision on that point.
This raises the novel questions whether or not a newspaper is an article of manufacture, and whether those who pursue the business of making or publishing newspapers are manufacturers within the meaning of the Constitution.
The legal meaning of this term, manufacturer, has been more than once considered by us, in this same connection. In one case, we said:
“A manufacturer is defined to be: One who is engaged in the business of working raw materials into wares suitable for use, who gives new shapes, new qualities, new combinations to matter which has already gone through some artificial process. A manufacturer prepares the original substance 4for use in different forms. He makes to sell, and stands between the original producer and the dealer, or first consumers, depending for his profit on the labor which he bestows on the raw material.” City vs. LeBlanc, 35 An. 747; City vs. Ernst, 34 An. 597.
Keeping this definition in view, the statement of facts embodied in this record shows that defendants use in their business valuable *563 machinery and implements; that, in addition to the clerical and editorial departments, they employ a large number of mechanical laborers, such as type-setters, engineers, pressmen and their assistants ; that they purchase and use great quantities of raw materials, such as paper, ink, glue, etc.; that, by means of this machinery and mechanical labor, they convert this raw material into a new and distinct article, fit for use and in commercial demand, called a newspaper, which they sell directly to dealers and consumers.
Certainly, .from a mechanical point of view, this presents all the essentials of manufacture under every definition of the word.
It also comes clearly within the reason and motive of the constitutional exemption, which was to encourage enterprises that furnished employment to home labor in the making of things which the people use and require, and which, if not made here, would be bought abroad.
But because the value of the newspaper is not derived from the raw material, or from the mechanical labor expended upon it, but rather as a mere medium for conveying the ideas and information impressed upon it by the purely intellectual labor of its editors, reporters, correspondents and advertisers, the judge a quo concluded that the newspaper is a product of mind labor rather than of hand labor, and, therefore, is not an article of manufacture.
The suggestion is plausible, but, we think, not sound.
Such a view would deny exemption to a book publisher or manufacturer of books; yet it seems very clear that he would be considered a manufacturer within the intendment of the Constitution. For when we turn to Art. 207 of the Constitution we find expressly exempted from property taxation, capital, étc., engaged in the “manufacture of stationery.” What is “stationery?” Worcester defines it thus: “The goods sold by a stationer, such as books, paper, pens, sealing wax, ink, etc.” He says that “ stationer ” originally was synonymous with book seller, and meant “ one who kept a stall or station for, selling books.” Rut in modern use the term “stationery” probably covers only blank books, account books, etc. Yet the Constitution clearly considers makers of such books as manufacturers; and it is certainly difficult to conceive of any reason or principle that should deny the same quality to the maker of printed books.
Are we to say that a maker of blank books and account books is a *564 manufacturer, but a maker of printed books is not, although the latter employs in his operations much more elaborate machinery and more varied and extensive manual labor than the former? We think not.
Then the argument stands thus: If the maker of blank books and account books is a manufacturer under the express terms of the Constitution, the maker of printed books, employing similar processes, with more machinery and labor, is also a manufacturer; and if the publisher of books is a manufacturer, all the reasons' on which the denial of the same quality to the publisher of a newspaper rests absolutely fail.
That the Legislature took this view seems very clear from the fact that while it mentions “agencies for publications” among the businesses taxed it makes no mention of home publishers; just as it taxes editors, but does not allude to newspaper publishers.
Other illustrations might be given of the fallacy of the view on which the judgment appealed from rests.
Who would deny that an establishment to make, with the aid of machinery and skilled workmen, optical instruments, such as telescopes and microscopes, would be exempt as a manufacture? Yet manifestly the value of such instruments is not derived from the brass, glass and other component materials, nor from the mechanical labor expended thereon, but from the scientific skill and knowledge which, by the power of adaptation and arrangement, gave to them the faculty of conveying to the eye visions of remotest stars or of minutest atoms.
Or, to take a case more homely and more strictly analogous, what would be said of the manufacturer of artistic wall paper, who impresses upon raw material, prepared for the purpose, designs of grace and beauty, invented and traced by his corps of skilled artists?
All manufacturers combine, in greater or less degree, the products of intellectual and of mechanical labor, and in very many the intellectual element confers upon the article produced its peculiar and greatest value. Such is conspicuously the case ■ with a newspaper; but since the making of newspapers is a business; since the newspaper, when made is a new and distinct article of commerce; .since the process of making it requires machinery and manual labor- and physical raw material as -essential and important factors, aggre *565 gating, as this record, shows, much the larger part of its cost, we can see no sound reason why such a business does not fall within the letter and spirit of the constitutional exemption as that of a manufacturer.
While we admit that newspaper publishing does not fall within the common usage of the term “manufacture,” the Constitution, Art. 207, attaches a broader meaning to the word by embracing within it the occupations of stationers, boat builders, chocolate makers, etc., which are not ordinarily considered as manufactures, any more than newspaper and book publishers.
We are satisfied that the Legislature took the same view of the subject, and this reinforces our own opinion.
We have nothing to say about- the tax levied on the business of editor, because not here involved. This record does not advise us whether the defendants are, personally, editors at all, and the claim is not based on such occupation, except as an element of the general business conducted by them, which is exempt.
It is therefore ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed, and that there be now judgment in favor of defendants, rejecting the plaintiff’s demand and the latter’s cost in both courts.